UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



FILED
FEB 2 8 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1. Milton Nelson Ward III
3141 Buena Vista Terrace SE
Apt 3
Washington, DC 20020
202-731-1799

VS.

2. Neighborhood Assistance Corporation of America (NA
Attn: Bruce Marks, President
43 Sheridan St.
Boston, MA 02130

3. Bruce Marks
President of NACA
43 Sheridan St.
Boston, MA 02130

4. Tammy Johnson
NACA HAND Director
4219 McCullough
San Antonio, TX 78212

5. Jason Tinoco
NACA Senior HAND Coordinator
4219 McCullough
San Antonio, TX 78212

7. CitiMortgage
Resident Agent: CT Corporation
120 South Central Ave.
Clayton, MO 63105

8. Karen Clark
CitiMortgage Loss Mitigation Dept
1000 Technology Drive
O'Fallon, MO 63368-2240

CASE NUMBER  1:07CV00413

JUDGE: Reggie B. Walton

DECK TYPE: Pro se General Civil

DATE STAMP: 02/28/2007

Complaint

9. This complaint claims this court has jurisdiction over this case under diversity of citizenship because the plaintiff is a resident of Washington, D.C. and two of the defendants are corporations one of which is incorporated in Massachusetts and the other in Missouri and three defendants are individuals living in either Texas or Missouri. Alternatively the court has jurisdiction because the plaintiff is a resident and the District of Columbia and the defendants did business with the plaintiff in D.C and this court serves as a "State" court for D.C.

10. The facts that led to this complaint are as follows. On April 7, 2006 I purchased a 4- unit apartment building through the Neighborhood Assistance Corporation of America mortgage program hereafter referred to as NACA. The loan was a rehab loan,

1

which provided for funds to be placed in escrow to pay contractors and included 6 months of interest so that there would be no mortgage payments while the work was being completed. The title company sent the rehab funds to CitiMortgage at closing and they were to be distributed to contractors as the work was completed upon agreement between myself, the contractor, the NACA HAND Department and CitiMortgage.

11. During the rehab process I encountered problems with the quality and timeliness of the work of the general contractor I had hired and whom had been approved by NACA. The contractor also refused to give me estimates for additional work I had asked for but had begun doing some of that work. I decided to replace the contractor and hired an attorney sometime in July of 2006 to help me with the negations and paperwork between both the contractor and NACA. An agreement was reached and the original contractor was paid for the work they had done so far out of the escrow funds in August 2006.

12. My attorney then submitted paperwork for a change order to include work on two of the units that had become vacant during closing that would be necessary to make them habitable so they could generate income and help pay the mortgage. My attorney started this process with defendant Jason Tinoco. Once the change order paperwork was submitted sometime around September 2006 Mr. Tinoco stopped responding to my attorney's communications. Subsequently my attorney sent letters to Tammy Johnson, Mr. Tinoco's immediate superior and Bruce Marks, the CEO and President of NACA. We received no reply.

13. In November 2006 my deferment was about to run out and I was facing default on my mortgage so I contacted CitiMortgage Directly. I was sent an application for a loan workout agreement, which I faxed in to the Loss Mitigation Department at CitiMortgage including a memo that detailed all the information in paragraphs 9, 10 and 11 of this complaint. A couple of weeks after faxing in the application I had received no response and was unable to speak with a human being in the Loss Mitigation department over the phone using the phone number on the package I was sent. So I went to a CitiBank/CitiMortgage location in Alexandria, VA and one of the employees there was able to put me in touch with Reggie Black (800-695-0384 ext. 27488) in the Loss Mitigation Department in Frederick, MD. Several Days later Mr. Black called me back and informed that my case had been referred to Karen Clark (800-695-0384 ext. 27574) who handles NACA loans. Subsequently Ms. Clark informed me that there was nothing CitiMortgage could do to help because NACA "owned" the loan and CitiMortgage only "serviced" the loan.

14. Having exhausted all my options in December I visited the local NACA office in Washington, DC where I had attended orientation, went through the qualification process and actually closed on my property in order to speak with the new Director, Keith Johnson. Mr. Johnson Instant Messaged defendant Tammy Johnson that she needed to call me. Later on that day 22 December 2006 Ms. Johnson called me from her cell phone. She was very apologetic and said it appeared that I had "fallen through the cracks". Ms. Johnson informed me that I should proceed with the necessary work with the contractors I had on file from the change order request without delay. She also mentioned the option of a contract modification that might help me get

financing to pay the mortgage payments while I was getting the units ready to rent. I told her I wanted to schedule a conference call between herself and my attorney to make sure we had an understanding on how to proceed going forward.

15. The conference call was scheduled for and took place on 28 December 2006, while I was in N.C. for my Grandmothers funeral. My attorney, myself, defendants Johnson and Tinoco and an attorney representing NACA were on the call. I told Ms. Johnson about the statement Ms. Black had made about NACA owning the loan. Ms Johnson stated that in fact CitiMortgage did "own" the loan and that NACA could only do what CitiMortgage allowed them to do. I then explained to Ms. Johnson that I had been unsuccessful in contacting the contractors I had originally submitted for the change order and that they had probably lost interest because of the many delays. Ms. Johnson then volunteered to contact the contractors I already was working with and any subsequent contractors as necessary to help convince them to work with the NACA program. After I forwarded her the contact information Ms. Johnson never contacted the Contractors although I requested she do so several times.

16. In January I began the time consuming process of contacting new contractors and gathering quotes. Once I had decided on a new contractor I forwarded the necessary license, insurance and tax ID information to Ms. Johnson on or about 5 Feb 2007. In the next day or two I called Ms. Johnson on her cell phone to follow up and obtain permission to proceed with the new contractor. At that time Ms. Johnson raised a question on the contractors license. I contracted the contractor and obtained the license information Ms. Johnson had requested and faxed it to her on 8 February 2007. On the morning of 9 February 2007 I called Ms. Johnson at her office to find out the status of my contractor approval and she answered the phone. She informed that she had other people on hold and couldn't speak to me. On 9 February I left a voice mail with Mary Pressman the Director of NACA member services, spoke to Katherine Epps in the NACA Loss Mitigation Department and to the local D.C. Director about the urgency of my speaking with Ms. Johnson and told them how she had refused to speak with me. Ms. Johnson sent me an email later that morning promising to call me after she got out of a meeting. I have not heard from Ms. Johnson since. I even attempted to call her again on her cell phone on the afternoon of 11 February 2007. At this point I was so distressed I was unable to go to work the next day.

17. The actions and inaction of these defendants constitute a willful, flagrant, reckless, wanton and oppressive breach of their fiduciary responsibilities as escrow agents and the infliction of emotional distress. The corporate defendants are liable under the principle of respondeat superior. The employee defendants are personally liable for tortious acts which they directed or participated in during their employment. Corporate Officers are liable for tortious acts they took part in and by his completely ignoring the situation Mr. Marks was taking part in this breach of fiduciary responsibility through negligence at best and by personally directing it at worst. These defendants are liable for compensatory damages. Because of the recklessness and outrageousness of their behavior they are liable for punitive damages and damages for emotional distress as well.

18. A trial by jury is requested in this case.

19. The plaintiff prays for judgment against the defendants as follows:

A. Recovery of 3 months of prepaid interest to which I was denied the intended benefit of due to defendants breach, in the amount of $9,949

B. Attorneys fees incurred due to trying to overcome the defendants collective incompetence $3,510

C. Rental income for the two units that should have been completed by 1 October 2006 until the units are occupied at an estimated rate of $1,400 per month per unit.

D. Immediate release of remaining escrow funds in the amount of $12,810 directly to plaintiff to complete the rehab in accordance with his judgment.

E. Mortgage payments in the amount of $3,316 per month plus late fees made by plaintiff beginning December 2006 and ongoing until the settlement of this case that could have been used for rehab work during the deferment period but for the delays caused by the defendants.

F. Prohibition of CitiMortgage from taking any actions towards foreclosure or reporting any negative credit activity of the plaintiff.

G. $50,000 in punitive damages

H. $50,000 for emotional distress.

I. Court Cost.

*Milton Nelson Ward III*

Milton Nelson Ward III
3141 Buena Vista Terrace SE
Apt 3
Washington, DC 20020

```
Court Name: District of Columbia
Division: 1
Receipt Number: 4616002631
Cashier ID: dcallis
Transaction Date: 03/01/2007
Payer Name: MILTON N WARD
--------------------------------
CIVIL FILING FEE
  For: MILTON N WARD
  Amount:       $350.00
--------------------------------
CHECK
  Check/Money Order Num: 1088
  Amt Tendered:   $350.00
--------------------------------
Total Due:     $350.00
Total Tendered: $350.00
Change Amt:      $0.00

07-0413

Only when the bank clears the
check, money order, or verifies
credit of funds, is the fee or debt
officially paid or discharged. A
$45 fee will be charged for a
returned check.
```

4

S-44
Rev.1/05 DC)

CIVIL COVER SHEET

F RBW

**I (a) PLAINTIFFS** Milton Ward

**DEFENDANTS** Neighborhood Assistance Corporation of America

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  88888
(IN U.S. PLAINTIFF CASES ONLY)

CASE NUMBER 1:07CV00413

JUDGE: Reggie B. Walton

DECK TYPE: Pro se General Civil

DATE STAMP: 02/28/2007

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Milton Ward
3141 Buena Vista Terrace SE Apt 3
Washington, DC 20020

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (FOR DIVERSITY CASES ONLY)

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

☐ **A. Antitrust**
☐ 410 Antitrust

☐ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other)** OR ☒ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☒ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act