**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MILTON NELSON WARD III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. 07CV00413** |
| | ) | |
| **NEIGHBORHOOD ASSISTANCE** | ) | |
| **CORPORATION OF AMERICA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT'S RULE 12(b)(1) MOTION TO DISMISS BASED UPON AN**
**ARBITRATION AGREEMENT BETWEEN THE PARTIES, OR IN THE**
**ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants The Neighborhood Assistance Corporation of America, Bruce Marks, Tammy Johnson, and Jason Tinoco, through undersigned counsel, hereby move this Court for an order denying Plaintiff's requests for injunctive relief and dismissing the above-captioned matter without prejudice or in the alternative for an order granting summary judgment in favor of Defendants, on the grounds that the totality of this dispute is subject to a valid and enforceable arbitration agreement, and for such other reasons as are set forth in Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss, provided herewith.

Respectfully submitted,

_____/s/ Douglas E. Fierberg_____
Douglas E. Fierberg
Bode & Grenier, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C. 20036-4192
(202) 828-4100
*Counsel for Defendant Neighborhood*
*Assistance Corporation of America*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Defendant's Rule 12(b)(1) Motion to Dismiss, Memorandum of Points in Authorities, and proposed Order was mailed, postage prepaid, this 10th day of April, 2007 to:

Milton N. Ward
3141 Buena Vista Terrace SE
Apt. 3
Washington, DC 20020
*Plaintiff*

Mitchel H. Kider, Esq.
Bruce E. Alexander, Esq.
Weiner Brodsky Sidman Kider PC
1300 Nineteenth Street, NW, Fifth Floor
Washington, DC 20036
*Counsel for Defendant Citimortage, Inc.*



_____ */s/Douglas E. Fierberg*_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MILTON NELSON WARD III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. 07CV00413 |
| | ) | |
| NEIGHBORHOOD ASSISTANCE | ) | |
| CORPORATION OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS THE NEIGHBORHOOD ASSISTANCE CORPORATION OF
AMERICA, BRUCE MARKS, TAMMY JOHNSON, AND JASON TINOCO'S
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS FOR ARBITRATION OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants The Neighborhood Assistance Corporation of America ("NACA"),

Bruce Marks, Tammy Johnson, and Jason Tinoco (together, "Defendants"), through

undersigned counsel, move for entry of an Order dismissing this matter without prejudice

for lack of subject matter jurisdiction to allow for arbitration of the dispute and denying

Plaintiff's requests for injunctions or, in the alternative, for an Order entering summary

judgment in Defendants' favor, and as reasons therefore states as follows.

**I.      INTRODUCTION AND STATEMENT OF UNDISPUTED FACTS.**

Both Plaintiff's claims and his requests for injunctions against NACA and its

employees Bruce Marks, Tammy Johnson, and Jason Tinoco fall outside this Court's

subject matter jurisdiction because the parties have entered into a valid arbitration

agreement which governs this matter.  In addition, Plaintiff has knowingly and

unambiguously waived his right to bring any such claims against NACA or its

employees.  Plaintiff's claim rests entirely upon a supposed fiduciary duty which NACA

allegedly owed to him, and yet Plaintiff previously signed a document explicitly acknowledging that NACA owes him no such duty.  The terms of his agreement with NACA are clear, unambiguous, and entirely enforceable under the laws of this jurisdiction, particularly because District of Columbia (and Maryland state and federal) courts have reviewed and upheld the terms of this very agreement.

NACA is a non-profit organization that provides <u>free</u> services to low- to moderate-income persons who wish to purchase and renovate homes in areas historically cut off from credit or abused by predatory lenders.  NACA's fee is paid by the lender. *See* NACA Disclosure Statement & Authorizations (the "Agreement") (attached hereto as Exhibit 1).  NACA's mission is to stabilize these neighborhoods.  The low- to moderate-income people who qualify for the program are able to obtain unique, <u>free</u> counseling, advocacy services, and mortgages that are <u>below market interest rates</u> with *no* down payment and *no* closing costs or application fees.  *Id.*  Funding for NACA mortgages comes after years of advocacy by NACA against predatory lenders.  Persons who obtain a mortgage through NACA – such as Plaintiff – also have access to NACA's Neighborhood Stabilization Fund to help them with mortgage payments – and save their homes – if they encounter serious financial hardship and comply with the terms of the NACA Program.

To qualify for and receive services – for free – under NACA's program, Plaintiff entered into a binding agreement wherein he waived his right to sue NACA or its employees.  *Id.*  On March 18, 2005, before he received any services from NACA, Plaintiff executed the Agreement.  *Id.*  Pursuant to this Agreement, all benefits provided by NACA to Plaintiff were subject to the terms and conditions of the Agreement.

Defendants had no prior relationship or dealings with the Plaintiff, and the Agreement defines the entirety of any relationship between the parties.

The section on page 8 of the Agreement entitled "Execution" contains an unambiguous agreement between the parties waiving Plaintiff's right to sue NACA or its employees *and* requiring him to submit to arbitration "a controversy or claim with NACA resulting from or otherwise relating to the Program, the purchase, refinancing or renovation of my/our home. . . ." *See* Exhibit 1. The waiver provision provides:

> By my/our signature(s) below, I/we acknowledge that I/we have received a copy of and have read this Disclosure Statement, and agree with and will abide by the statements and requirements stated herein. I/we understand the benefits and obligations of participating in the Program and that I/we may, at any time prior to the closing on my/our mortgage loan, cease participating in the Program without obligation to NACA. <u>In addition, by my/our signature(s) below, I/we also acknowledge that I/we understand the risks involved in purchasing, refinancing, renovating and owning my/our own home, and I/we hereby release NACA from, and agree that I/we will not hold NACA, its directors, officers, staff, agents, independent contractors, or consultants responsible for any and all claims (including claims of negligence), suits, losses, costs, expenses or damages (including attorneys' fees) that may result from, arise out of or otherwise relate to my/our participation in the Program, the purchase, refinancing or renovation of my/our home.</u> (emphasis added)

The Agreement further provides, "I/We understand and acknowledge that absent a written agreement to the contrary, NACA does not and will not serve as my/our fiduciary in any aspect of the Program including but not limited to the purchase, refinancing or renovation process." Exhibit 1, p. 9. No subsequent agreement to the contrary was ever executed by NACA or any of the Defendants, and no such agreement is referenced in Plaintiff's Complaint or Amended Complaint (together, the "Complaint").

In his Complaint against Defendants, Plaintiff strategically fails to bring these facts and this operative document to the Court's attention. The result is a frivolous claim,

which has no good faith basis in law or fact, and wastes the resources of this Court and

NACA.

**II.  THIS COURT SHOULD DISMISS THIS ACTION WITHOUT
PREJUDICE PURSUANT TO THE AGREEMENT TO ARBITRATE THE
ISSUES RAISED IN THE COMPLAINT.**

Although Defendants specifically deny that they engaged in any of the conduct

alleged in Plaintiff's Complaint, the Complaint must be dismissed to allow for arbitration

without addressing the merits of the claims because the entirety of the events of which

Plaintiff complains concerns Defendants' performance pursuant to the Agreement which

served as the base for the parties' interactions.  Page 9 of the Agreement contains an

unambiguous agreement between the parties requiring them to submit to arbitration any

claims arising from Plaintiff's participation in NACA's programs.  *See* Exhibit 1.

Pursuant to the Federal Arbitration Act ("the Act"), 9 U.S.C. § 2, "a contract

evidencing a transaction involving commerce … shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract."  The Act enunciates a strong "federal policy favoring arbitration . . . ." *Moses

H. Cone Memorial Hosp. v. Mercury Construction. Corp.*, 460 U.S. 1, 24, 74 L.Ed. 2d

765, 103 S.Ct. 927 (1985).   The Act "leaves no place for the exercise of discretion by

the district courts, but instead mandates that district courts shall direct the parties to

proceed to arbitration on issues as to which an arbitration agreement has been signed."

*Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 84 L.Ed. 2d 158, 105 S.Ct. 1238

(1985).  So long as a valid arbitration agreement has been entered into, and the dispute

falls within the scope of the arbitration agreement, arbitration is the only remedy for the

complaining party.  *E.g., Nelson v. Insignia/ESG, Inc.,* 215 F. Supp. 2d 143 (D.D.C.

2002); *Lombard Securities Inc. v. Thomas F. White & Co., Inc.*, 903 F.Supp. 895 (D. Md. 1995).

Section 3 of the Act provides that the district court shall stay the proceedings upon determining that a valid arbitration agreement exists. However, when all the claims in a lawsuit are required to be arbitrated, dismissal is the proper remedy. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-710 (4th Cir. 2001); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Emeronye v. CACI Int'l*, 141 F. Supp. 2d 82 (D.D.C. 2001).

All of the claims contained in Plaintiff's complaint are arbitrable, including the claims made pursuant to the Equal Credit Opportunity Act (the "ECOA"). The Supreme Court has held that federal statutory claims – even claims under statutes intended to promote important social policies – may be resolved through arbitration if the parties so choose. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89, 148 L. Ed. 2d 373, 121 S. Ct. 513 (2000). Only a finding of congressional intent to preclude a waiver of judicial remedies under the statutory scheme is enough to render a federal statutory claim inarbitrable. *Id.* at 90. Congress had no such intent with regard to the ECOA. *See, e.g., Bowen v. First Family Fin. Servs.*, 233 F.3d 1331 (11th Cir. 2000) ("We hold that, for purposes of the ECOA . . . Congress did not create a non-waivable right to pursue TILA claims in a judicial forum. . . ."); *Truckenbrodt v. First Alliance Mortg. Co.*, 1996 U.S. Dist. LEXIS 22459 (N.D. Ill. 1996) ("There is no indication that Congress intended to preclude a waiver of judicial remedies under the ECOA."); *Pitchford v. AmSouth Bank*, 285 F. Supp. 2d 1286 (M.D. Ala. 2003).

A valid arbitration agreement was entered into between Plaintiff and NACA.  All the claims asserted by Plaintiff against Defendants fall entirely within the scope of that arbitration agreement.  These facts the Plaintiff cannot dispute.  Defendants have not waived or revoked that Agreement, nor do grounds for waiver or revocation exist. Defendants are willing and ready to arbitrate this matter and satisfy all terms, conditions, and rules of the American Arbitration Association, despite the fact that the express waiver of claims executed by Plaintiff renders any arbitration proceedings against Defendants frivolous.  Nevertheless, dismissal of the Complaint is the appropriate remedy.  See *Dean Witter Reynolds,* 470 U.S. at 218; *Choice Hotels*, 252 F.3d at 709-710.

The U.S. District Court for the District of Maryland recently reached that conclusion in two other cases involving this same agreement.  Judge Motz dismissed the claim before him after finding that the arbitration agreement was valid.  *See Kushindana v. CitiMortgage Inc., et. al.*, Civil No. JFM-06-3057 (D. Md. Apr. 3, 2007).  In his Memorandum Opinion, Judge Motz endorsed the reasoning of his colleague, Judge Bennett, who had previously found that the arbitration agreement is valid and that therefore the case must be dismissed.  *See Kushindana v. Neighborhood Stabilization Fund, Inc.*, Civil Action No. RDB-06-1328 (D. Md. Feb. 28, 2007) (attached hereto as Exhibit 2).  As these two judges of the Maryland District Court have already found, the arbitration agreement is valid and the claims must therefore be dismissed.  Lacking subject matter jurisdiction over these claims, the Court similarly lacks jurisdiction over the injunctive relief Plaintiff requests pursuant to those claims and cannot hold a hearing

on the merits of those request.  Plaintiff's requests for preliminary injunctions, therefore, must be denied as moot without a hearing.

WHEREFORE, Defendants The Neighborhood Assistance Corporation of America, Bruce Marks, Tammy Johnson, and Jason Tinoco respectfully request that this Court enter an Order denying Plaintiff's requests for injunctions and dismissing the Complaint against each and all of the Defendants.

## III.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS WAIVED HIS RIGHT TO FILE SUIT AGAINST DEFENDANTS AND DISCLAIMED ANY FIDUCIARY DUTY DEFENDANTS COULD OWE HIM.

As set forth above, Plaintiff's allegations are subject to the parties' agreement to arbitrate.   Should, however, any doubt arise as to the ambit of those allegations, Defendants are, in the alternative, entitled to summary judgment because Plaintiff has waived his right to file suit against them and disclaimed any fiduciary duty that they could owe him.[1]

A party is entitled to summary judgment if the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate in a contract action where there is only one reasonable interpretation of the contract.  *See Farmland Industries, Inc. v. Grain Bd. of Iraq,* 904 F.2d 732, 736 (D.C. Cir. 1990); *see also Charbonnages de France v. Smith*, 597 F.2d 406, 415 (4th Cir. 1979) (stating that summary judgment is appropriate in a contract action where the contract is "unequivocal" as to its terms and the intentions of both parties to be bound).

---

[1] Defendant would be wholly justified in seeking only summary judgment because even in arbitration it is clear that Plaintiff's claims are frivolous and must be dismissed.

The clear terms of the Agreement executed by Plaintiff bar him from bringing the claims he alleges against Defendants. The Agreement also clearly states that Defendants cannot owe Plaintiff the alleged fiduciary duty which forms the entire basis of Plaintiff's claims. This is the only reasonable interpretation of the Agreement, and exculpatory contract provisions such as these are absolutely valid and enforceable under conventional contract law in the District of Columbia. *See Derzavis v. Security Storage Co.*, 703 A.2d 839, 842 (D.C. 1997) (stating that a release is a contract and, unless invalid, is enforceable by its terms); *Saslaw v. Rosenfeld*, 148 A.2d 311, 312 (D.C. 1959) ("The construction of a release is governed by the intent of the parties as manifested in the language of the instrument."). "If the release is facially unambiguous, we must rely solely upon its language as providing the best objective manifestation of the parties' intent." *Bolling Federal Credit Union v. Cumis Ins. Soc.*, 475 A.2d 382, 385 (D.C. 1984).

Importantly, the validity of the very waiver at issue herein has been affirmed by no less than two courts, including this very Court. *See Brown v. NACA*, C.A. No. 00012 (Superior Court of the District of Columbia, May 11, 2000) (J. Susan Winfield); *Togans v. NACA et al*., Maryland Court of Special Appeals, No. 01645 (September 2003). In *Brown*, plaintiff filed claims against NACA and numerous others, and Judge Winfield dismissed the claims against NACA on the basis of the language contained in the Agreement. That Order was not appealed. In *Togans*, claims filed against NACA and numerous others were dismissed by the Circuit Court for Prince Georges County per the terms of the Agreement, and that decision was affirmed by the Maryland Court of Special Appeals. Thus, the enforceability of this release has been reviewed and upheld by

District of Columbia and other courts.  Plaintiff has no basis for avoiding the clear terms of his agreement that gave him access to valuable, yet free, services in exchange for a release from liability.  This was the parties' bargain, and it must be enforced.

The Disclosure Statement is clear and there is no dispute but that Plaintiff signed the Agreement.  Accordingly, there is no issue of disputed fact and Defendants are entitled to judgment as a matter of law.

Plaintiff therefore has no likelihood of prevailing on the merits of his claims.  In order to grant the preliminary injunctions which Plaintiff seeks, this Court must find that Plaintiff has a "substantial likelihood of success on the merits. . . ."  *See CityFed Fin. Corp. v. Office of Thrift Supervision, et. al.,* 58 F.3d 738, 746 (D.C. Cir. 1995).  Due to his unequivocal express waiver of any right to file suit against Defendants and of any fiduciary duty on the part of Defendants, Plaintiff cannot possibly succeed on his claims.  This Court cannot reach any other conclusion but that his requests for injunctions must be denied.

Additionally, the Disclosure Statement clearly states, ". . . [I]f NACA prevails in any such arbitration, NACA shall, in addition to all other remedies provided by law, be entitled to an award of its attorneys' fees and costs."  Exhibit 1, p. 9.  Since Plaintiff brought his claim directly to this Court instead of an arbitrator as required under the Agreement, NACA should be entitled to receive its attorneys' fees and costs in connection with this action.

WHEREFORE, Defendants The Neighborhood Assistance Corporation of America, Bruce Marks, Tammy Johnson, and Jason Tinoco respectfully request that this Court enter an Order granting summary judgment in their favor and against Plaintiff, and awarding The Neighborhood Assistance Corporation of America its reasonable attorneys' fees and costs.

Respectfully submitted,

_____ */s/ Douglas E. Fierberg* _____
Douglas E. Fierberg, Esq.
Bode & Grenier, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C. 20036-4192
(202) 828-4100
*Counsel for Defendant Neighborhood*
*Assistance Corporation of America*

# NEIGHBORHOOD ASSISTANCE CORPORATION OF AMERICA ("NACA")
## DISCLOSURE STATEMENT & AUTHORIZATIONS[1]
### (Revised 10/1/04)

The Neighborhood Assistance Corporation of America ("NACA") is a Massachusetts non-profit corporation.  Through community outreach and aggressive advocacy activities, NACA has identified, exposed and opposed predatory lending policies and exploitative practices by financial institutions.  Largely as a result of NACA's advocacy activities, NACA is able to provide the best home ownership program in America, including comprehensive pre- and post-ownership housing services (the "Program").  References herein to NACA also apply to related, affiliated or outgrowth corporations including successors and assigns.

NACA provides an extraordinary mortgage product and comprehensive housing services to low- to moderate-income people and persons purchasing in low- to moderate-income communities ("Participant" or "Participants").   The Program was established to provide affordable home ownership opportunities for Participants without requiring a down payment, points or closing costs and also to help those who otherwise cannot meet the income, debt, credit or eligibility criteria that mortgage lenders require.  In particular, Participants who satisfy the requirements of the Program will be eligible to obtain mortgage loans to purchase, purchase and rehabilitate, or refinance their home with no down payment, no closing costs, no fees, and no private mortgage insurance premiums.

NACA wants to give as many people as possible an opportunity to purchase the home of their dreams.  Therefore, all the services provided by NACA through the Program are free (rehab fees are included in the total renovation costs).  To obtain the NACA mortgage and to receive all of NACA's services for free, NACA requires all Participants to agree to certain things, including, without limitation:

1.  To participate in at least five activities a year to support neighborhood stabilization initiatives and other issues central to NACA's mission;

2.  To become a member of the Neighborhood Stabilization Fund as described in the Neighborhood Stabilization Fund Disclosure Statement and Membership Application;

3.  Both applicant and co-applicant(s) must reside at the house they purchase or refinance through the Program as their primary residence for as long as they have a mortgage obtained through the Program.  Owner-occupied housing is fundamental to NACA's mission of stabilizing communities.  Thus, a violation of this requirement could entitle the lender to reject the mortgage application, foreclose on the mortgage or take other actions.  In addition, NACA can require that a lien be placed on the property and/or the Participant(s) execute a promissory note to NACA to insure that the Participant(s) live there for as long as they have a mortgage through NACA. The lien or note may be

---

[1] This document may have been changed from the one in the Home Buyer Workbook or a previous version.  It is important that you read carefully prior to signing.

Copyright NACA 2004

Exhibit 1

through NACA or the Neighborhood Stabilization Fund (NSF) and include a specific amount as determined by NACA, in its sole discretion, to be paid if the property is not owner-occupied. The lien and/or note would not limit NACA or the lender from taking additional actions to enforce the owner-occupancy requirement. Owner-occupancy is also one of the requirements for access to the Neighborhood Stabilization Fund ("NSF").

4. To release and hold NACA harmless from certain claims as more fully identified below. Participants are responsible for knowing the requirements of the Program, including the benefits and obligations of participation as well as the policies and procedures. Participants must read and sign this Disclosure Statement prior to their initial counseling session. Participants should choose to discontinue their participation in the Program if they do not agree with NACA's requirements.

## ELIGIBILITY:

NACA establishes and administers eligibility criteria to participate in the Program. The eligibility criteria may vary from office to office, and NACA may change the criteria at any time. NACA, at its sole discretion, determines whether a Participant meets the eligibility criteria. NACA retains the right to disqualify any Participant from the Program at any time during the process if NACA determines the Participant does not meet the eligibility criteria. NACA's decision regarding a Participant's eligibility is final. A key criteria is that all Participants, including the applicant, co-applicant(s), and relations who will live in the home, cannot own other property at the time of the closing on the home through the Program. NACA may seek remedies and take actions to enforce the eligibility criteria.

## PROCEDURES AND REQUIREMENTS:

NACA promotes fair housing and equal credit and complies with all such laws and regulations. In order to ensure compliance, NACA will request information from the Participant, including the following: race, national origin, religion, gender, disability, citizenship, marital status and source of income. NACA's Program consists of comprehensive housing counseling to help Participants decide whether to purchase or refinance a home, how much to spend, and to provide assistance in purchasing and maintaining their home.

NACA must approve an application for NACA Credit Access prior to taking a Participant's mortgage application for submission to a Participating Lender. When the Participant requests to submit a mortgage application to a Participating Lender, NACA will consider this an application for NACA Credit Access. NACA will determine if the Participant has met the criteria for approval for NACA Credit Access. NACA can either accept or reject the application within its sole discretion, and its decision is final. The Participant is free at any time to apply directly for credit to any mortgage lender, including Participating Lenders or other lenders, outside of the Program. As long as their NACA Credit Access application is not denied, NACA can assist the Participant in completing and submitting a mortgage application to a Participating Lender. If the Participant's application for NACA Credit Access is denied, NACA will communicate that to the Participant and the Participant may request a formal denial from NACA's national office. A written denial must be requested and then processed. This may take some time, during which period NACA would not be responsible for any costs or consequences associated with any delays.

Copyright NACA 2004

The Application for NACA Credit Access is not a loan application to a NACA Participating Lender. If a mortgage application is not taken in a timely manner, NACA may request that the Participant's information and documentation be updated in order to reconsider and/or approve an application for NACA Credit Access in the future. Regardless of the outcome of the Credit Access Application, NACA is under no obligation to submit a mortgage application to a participating or any other lender. NACA's approval of the Participant's Application for NACA Credit Access does not guarantee that the lender will approve the loan application. The Participant can apply for NACA Credit Access once they have been NACA Qualified and have a signed and executed Purchase and Sale Agreement.

NACA establishes the Program's procedures and requirements. NACA may change or amend the procedures and requirements at any time, with or without notice. Any changes in procedures and requirements become effective on the date specified by NACA and shall apply to all Participants as determined by NACA. NACA, at its sole discretion, determines whether a Participant has met the requirements and/or followed the procedures of the Program. NACA retains the right to discontinue processing and assisting a Participant through the Program at any time. NACA's decisions regarding the procedures, requirements and compliance are final.

## SERVICES:

NACA offers homebuyers and homeowners a broad range of services including: homebuyer classes; one-on-one financial and credit counseling; assistance in providing documentation necessary to qualify for a mortgage; purchase assistance through real estate buyer agents/brokers; assistance through the mortgage process; and post-ownership assistance. NACA services are free, whether or not the Participant ultimately qualifies for assistance, purchases and finances a home, or refinances through the Program (home inspections and rehab estimates are paid separately, and project supervision of the rehab is included as part of the rehab cost). NACA, at its sole discretion, can terminate its services to a Participant. NACA's decision to terminate services to a Participant is final.

Participants are prohibited from paying any fee or making any payment to a NACA employee, independent contractor or approved vendor other than those specifically authorized under the NACA program, which are limited to fees for credit reports, home inspections and homeowner's insurance. Any other payments must be approved in advance by NACA's national office. NACA, at its discretion, can disqualify Participants from the Program and take other appropriate action if the Participant pays any unauthorized fee or payment. Participants are to contact NACA's Member Services Coordinator at 1-888-297-5568 to determine if a requested payment is authorized.

Since NACA does not charge Participants for the services it provides through the Program, NACA raises the money it needs to operate and administer the Program from a variety of sources. Sources of the Program's operating revenues include fees from mortgage brokerage and real estate brokerage, as well as fees and grants from lenders participating in the Program. In some jurisdictions, NACA is a licensed mortgage broker. Mortgage broker fees from lenders vary from lender to lender and are paid by the lender for the services NACA provides. The fees do not affect Participants' eligibility for a mortgage through the Program.

Copyright NACA 2004

NACA has worked with lenders to make a mortgage product available that meets the needs of working people. NACA, however, makes no representations or assurances of any kind that this mortgage product is appropriate for a Participant's particular circumstances or is the best one available. NACA encourages all Participants to identify other mortgage products that may better meet their needs. If requested, NACA can help Participants evaluate other mortgage products. The Participant ultimately decides which mortgage product to select. As with every decision made by the Participant in the Program, the Participant is solely responsible for the consequences of those decisions and representing his/her own interests and making his/her own decisions.

If at any time during the Participant's involvement in the Program, he/she is not satisfied with the services provided or does not feel he/she is being treated fairly, the Participant must contact NACA's Member Services Director at the national office in Boston, MA (1-888-297-5568) so that NACA can be given a fair opportunity to evaluate and resolve the particular concerns. The Participant understands and agrees that the decision by the national office is final and, to the maximum extent allowable by the law of the applicable jurisdiction, cannot be made the subject of any civil claim or litigation by the Participant against NACA.

## PARTICIPANT RESPONSIBILITIES:

Nothing NACA nor any employee or agent of NACA says should be construed as, or otherwise constitutes, a recommendation or warranty that any Participant purchase a home or refinance a home, either with a mortgage through the Program or any other program. NACA employees or agents do not have the authority to recommend, require or encourage any Participant to purchase a particular property or any property, or make any representations or warranties regarding such purchase or participation in the NACA Program. NACA's determination that a Participant has met the eligibility requirements of the Program and is qualified to submit a mortgage ("NACA Qualification") does not constitute, and should not be understood by the Participant as a recommendation by NACA that the Participant should purchase, refinance or renovate a home. Once NACA Qualified, the Participant must decide on his/her own whether to purchase, refinance or renovate a property, without relying upon statements made by NACA, its employees, agents or contractors.

NACA materials, procedures and requirements are for NACA's informational purposes only and apply generally to the purchase, rehabilitation, and refinance process. These procedures and requirements do not create any contractual or other obligation between NACA and the Participant. In addition to the NACA Homebuyer's Workbook, NACA Housing Consultants and staff provide information and assistance to Participants. However, NACA has no obligation to the Participant to monitor or ensure that they meet each requirement or follow every procedure. Each Participant faces their own unique financial circumstances and each purchase/refinance presents particular issues that are not intended to be addressed in these materials.

The Participant is responsible for scheduling all appointments and ensuring that all deadlines are met, including but not limited to: taking and submitting the mortgage application; Purchase and Sale Agreement requirements and commitments; the closing date; payoff dates; the reinstatement date to prevent foreclosure; and/or any other contractual or other requirements. NACA will have no financial, contractual or other obligation if these, other deadlines, or other

Copyright NACA 2004

obligations of the Participant are not met. The Participant has the sole responsibility to apply for NACA Credit Access, completing a mortgage application, and making sure that all requested documents and information are provided. No act by NACA's staff, agent or associated vendors, including accessing a Participant's credit report, will be considered an application for NACA Credit Access or credit. NACA does not warrant that its determination that a Participant is NACA Qualified or NACA Credit Access approved means that a lender will approve a loan application submitted by the Participant.

NACA may require that a Participant provide documentation or take actions that are not provided or performed by NACA. NACA may provide a Participant with lists of third-party vendors or refer Participants to them and may require a Participant to use venders who meet certain requirements as determined by NACA. These third-party venders could include but are not limited to: Home Inspectors, Attorneys, Appraisers, Homeowner Insurance Agencies, Rehabilitation Specialists, and/or Real Estate Agents/Brokers. NACA makes no representations or warranties as to the qualifications, skills or appropriateness of these persons or companies, and NACA makes no representations or warranties about any aspect of their performance. NACA will not indemnify Participants for any funds paid to these or any other vendors or for any damages incurred by Participants as a result of any actions, inaction, negligence or misconduct of any kind by such persons or companies.

Participants are required to pay for credit reports[2], home inspections, rehabilitation estimates and/or other fees related to the purchase, refinancing or renovation of a home. Participants will likely be required to provide a deposit when they sign a purchase contract. NACA is not responsible for any of the costs incurred by a Participant and will not indemnify the Participant for any costs if the lender denies the loan application or for any other reason. Once a loan application is taken by NACA and forwarded to the lender, the lender will be responsible for providing the Participant with all documents required by federal and state lending laws, including but not limited to Truth-In-Lending Statements and Good Faith Estimates.

It is equally important for all Participants to realize that NACA cannot and does not offer legal, tax or accounting advice to Participants. NACA, however, wishes to alert all Participants to the fact that if they do buy and finance a home through the Program, it may be beneficial to itemize deductions for federal and state income tax purposes. Whether or not it is beneficial will depend entirely upon personal tax and financial circumstances. As a result, *do not* interpret this Disclosure Statement or any recommendations from a NACA Housing Consultant, staff, agent or any other representative of NACA as legal or tax advice. All Participants should discuss these issues with a lawyer and/or the person who helps the Participant prepare their taxes.

NACA expressly encourages all Participants in the Program to obtain their own legal counsel or other qualified professional to review this Disclosure Statement, answer legal questions or provide legal advice so that the Participant fully understands the terms of the Disclosure Statement and the nature and extent of his/her rights and obligations under the Program. NACA also expressly encourages all Participants in the Program to obtain an accountant or

---

[2] NACA has negotiated a reduced-rate fee for credit reports charged by the reporting agencies; these fees will be collected by NACA in order to purchase a report on the Participant's behalf.

Copyright NACA 2004

financial advisor to detail the financial consequences of purchasing, refinancing, or renovating a home, participating in this Program, or the terms and conditions of any financing obtained by the Participant.

It is the policy of NACA to retain copies and return the originals of all documents submitted to NACA in pursuit of our mortgage product. No copies that NACA retains will be returned to the Participant. Any and all documentation obtained by NACA employees and staff are in fact work-product and thus privileged information property of NACA and will not be released to the Participant unless required by law. It is our strong recommendation that all Participants not only maintain a file for their original documents, but also a copy of these documents for their own personal needs.

## NO REPRESENTATIONS OR WARRANTIES:

In addition to other matters specifically addressed in other portions of this Disclosure Statement, Participants must understand that NACA does not make, and that NACA's staff, employees and agents cannot make, any representations, warranties or promises, express or implied, to the Participant, or upon which the Participant should rely, related to any of the following matters:

- That NACA represents the Participant's interests in a fiduciary or any other capacity;
- That the Participant will qualify for a mortgage loan from one of the lenders participating in the Program;
- That the lender will approve the Participant's mortgage application if they are NACA Qualified;
- That participating in this Program and purchasing, refinancing or renovating a home is the correct financial or personal decision for the Participant;
- That the home the Participant purchases, refinances or renovates through the Program will meet their purposes;
- That the home the Participant purchases, refinances or renovates is free of defects;
- That the property is worth the amount of the mortgage or that the property's value will remain the same or increase in value;
- That NACA has any obligation to the Participant to ensure that deadlines are met including but not limited to requirements in the Purchase and Sale Agreement such as mortgage application submission, commitment date, approval date and closing date;
- That the services performed by vendors, contractors, inspectors, or other third-parties will be satisfactorily performed;
- That participating in the Program will accomplish the Participant's particular goals or result in any financial benefit to the Participant;
- That participating in the Program is free from risk, including risks associated with the purchase, refinancing and renovation of a home such as, without limitation, loss of financing, default, faulty, incomplete or substandard construction services, and property loss through natural or other causes.

NACA makes no representations or warranties to the Participant with respect to any matter concerning the Program, the purchase, refinancing or renovation of their home, or with respect

Copyright NACA 2004

to any of the Participant's rights and interests, other than what is set forth herein and limited by the terms and conditions of this Disclosure Statement.

## NOTICE OF RISKS OF HOME OWNERSHIP:

The process of looking for, buying, financing and owning a home is filled with emotional, legal and financial risks. NACA cannot protect the Participant from those risks. For example, the Participant will make the decision to purchase a home and is responsible for the required deposit, but the lenders participating in the Program make the final underwriting decision. In addition, the Participant may, through no fault of their own, suffer a serious financial setback that could prevent them from paying their monthly mortgage payments. If such problems do arise, NACA may be available to provide the Participant with advice and counseling, but the Participant must understand that NACA may not be able to suggest and/or achieve a solution that is acceptable to them.

Obtaining mortgage financing for a home through the Program and becoming a participating member of the Neighborhood Stabilization Fund will impose important obligations on the Participant. The Participant is strongly advised not to sign a binding Purchase and Sale agreement for a home or submit a mortgage loan application until they have discussed both options with an attorney and/or other consultants who would advise them in connection with the purchase, refinance or renovation of their home and the closing of their mortgage loan.

The Participant may elect to continue to participate in the Program, subject to all of its requirements as set forth herein, or may elect to stop participating in the Program, in which case they would not be eligible to obtain a mortgage loan through the Program.

## AUTHORIZATIONS:

I/we specifically acknowledge and agree to authorize NACA, its staff, agents, successors and/or assigns and/or related, affiliated or outgrowth corporations to:

Credit Report Authorization:
Obtain a copy(ies) of my/our credit report(s) relevant to the Program. I/We understand that NACA is obtaining my/our credit report(s) in order to assist me/us in determining my/our financial circumstances. I/We understand that despite authorizing NACA to obtain a credit report I/we have not yet applied for NACA Credit Access. (NACA requires at least one credit report, and in most instances more than one, to become NACA Qualified. NACA Qualification is good for three months. Another credit report is required to confirm your credit status prior to submitting an application for NACA Credit Access. NACA may pull credit reports for the NSF post-ownership program and additional reports for as long as you participate in the Program. A fee will be required for each credit report NACA pulls.)

Credit Access Application Authorization:
Accept and review my/our application for NACA Credit Access. I/We understand that a mortgage application will only be taken if and when I/we have been NACA Qualified and request to submit a mortgage application. I/We understand that my/our request to complete a mortgage application will be considered to be an Application for NACA Credit Access, and no further paperwork or signature shall be required for my/our application to be submitted.

Copyright NACA 2004

Other Authorizations:

1. Review all related mortgage documents, including but not limited to: credit reports, tax returns, divorce or separation documents, applications, commitment letters and closing documents.

2. Verify or re-verify information relevant to the Program, including savings, employment, income and credit information, landlord verifications and any other information related to my/our qualification, mortgage application and the servicing of my/our mortgage.

3. Review all documents as prepared by third-party venders as part of my/our NACA Credit Access Application or mortgage application.

4. Retain and/or disclose all documents, applications and information related to my/our NACA Qualification, NACA Credit Access application, NSF application, mortgage application, and/or mortgage.

5. Disclose, share and use information and documentation about my/our credit, assets, income, employment, applications, loan, mortgage payments and servicing, as NACA deems appropriate.

6. Publicize my/our home purchase or refinance case in marketing, photos, video, website, internet, intranet, outreach and the media. This would also include, unless I/we notify NACA to the contrary, the placing of a sign in my/our yard or property explaining that I/we purchased a home through NACA.

7. Communicate with me/us via telephone and email. This grants all authorizations required by laws that would otherwise restrict communications to individuals or households.

8. Communicate with and obtain information from all entities that own or service the mortgage I/we obtained through the Participating Lender, including but not limited to communicating about and obtaining information from the entity concerning delinquencies and other payment issues.

9. Take steps in the event that any payments on a loan become delinquent including accessing credit reports, obtaining creditor and mortgage information, reporting my/our name(s) and circumstances surrounding the loan to persons and organizations, providing my/our credit report and other information and documentation to the NSF peer lending committee, and/or all other actions, rights and remedies as NACA deems appropriate. This can also be done by the lender if authorized by NACA.

10. *In the event that I am/we are at risk of losing my/our home and the lender may incur a* payoff that is less than the total amount due (i.e. short sale), to discuss and negotiate with secured parties payoffs of amounts less than the total amount due.

## EXECUTION:

By my/our signature(s) below, I/we acknowledge that I/we have received a copy of and have read this Disclosure Statement and agree with and will abide by the statements and requirements stated herein. I/We understand the benefits and obligations of participating in the Program and that I/we may, at any time prior to the closing on my/our mortgage loan,

Copyright NACA 2004

cease participating in the Program without obligation to NACA. In addition, by my/our signature(s) below, I/we also acknowledge that I/we understand the risks involved in purchasing, refinancing, renovating and owning my/our own home, and I/we hereby release NACA from, and agree that I/we will not hold NACA, its Directors, Officers, Staff, Agents, Independent Contractors, or Consultants responsible for any and all claims (including claims of negligence), suits, losses, costs, expenses or damages (including attorneys' fees) that may result from, arise out of or otherwise relate to my/our participation in the Program, the purchase, refinancing or renovation of my/our home. Should there ever arise a controversy or claim with NACA resulting from or otherwise relating to the Program, the purchase, refinancing or renovation of my/our home including without limitation whether any claim or dispute is subject to arbitration, such controversy, claim or dispute shall be submitted to and resolved by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect. Any arbitration hereunder shall be held in Boston, Massachusetts, or at such other location as NACA may designate. The judgment in the arbitration proceeding shall be final and binding on the parties, and the judgment on such award rendered by the Arbitrator may be entered in any court having competent jurisdiction. Each party required to participate shall be personally responsible for one-half of the costs of arbitration excluding costs associated with each party's presentation, which shall be borne by that party; provided, however, that if NACA prevails in any such arbitration, NACA shall, in addition to all other remedies provided by law, be entitled to an award of its attorneys' fees and costs.

I/We understand and acknowledge that absent a written agreement to the contrary, NACA does not and will not serve as my/our fiduciary in any aspect of the Program including but not limited to the purchase, refinancing or renovation process.

Participant One:

Signature: _____*Miller Ward*_____ Date: *March 18, 2005*

Name: _____*Milton Ward*_____ Social Security Number: *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*

Participant Two:

Signature: _____ Date:_____

Name: _____ Social Security Number: _____

Participant Three:

Signature: _____ Date:_____

Name: _____ Social Security Number: _____

\* If the Participant wishes to have a copy of this signed Disclosure Statement, he/she should request it from a NACA staff person or their Housing Consultant.

Copyright NACA 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KWAKU O. KUSHINDANA | * | |
| Plaintiff *pro se* | * | |
| v. | * | CIVIL ACTION NO. RDB-06-1328 |
| NEIGHBORHOOD STABILIZATION FUND, INC. | * | |
| | * | |
| Defendant | * | |

\* \* \* \* \* \*

## MEMORANDUM OPINION

The Plaintiff, Kwaku O. Kushindana, proceeding in proper person, has filed a complaint in this action against the Defendant, Neighborhood Stabilization Fund, Inc. ("NSF"), alleging that he was improperly denied benefits from NSF in connection with an agreement between the parties, pursuant to which he was to receive certain benefits. The Plaintiff's complaint alleges damages in excess of $75,000.00 and alleges jurisdiction of this Court based on diversity of citizenship, pursuant to 28 U.S.C. § 1332. Presently pending before this Court is the Motion of the Defendant, Neighborhood Stabilization Fund, Inc., to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure based specifically upon an arbitration agreement existing between the parties. The Court has reviewed the submissions of the parties and no hearing is necessary in this matter. *See* Local Rule 105.6 (D. Md. 2004). For the reasons set forth below, the Defendant's Motion to Dismiss is GRANTED and this matter shall be dismissed without prejudice.

Exhibit 2

## BACKGROUND AND PROCEDURAL HISTORY

The facts are viewed in the light most favorable to the Plaintiff and are indeed essentially undisputed. On December 21, 2004, the Plaintiff Kushindana entered into an agreement pursuant to which the Defendant Neighborhood Stabilization Fund, Inc. was to provide certain benefits to the Plaintiff in connection with the procurement of mortgage loan financing. Paragraph 18 of that agreement specifically contained an arbitration clause pursuant to which any "claim or dispute regarding the terms or conditions" of the agreement were to be submitted to arbitration in accordance with the "commercial arbitration rules of the American Arbitration Association." As a result of the Plaintiff's cancellation in the program administered by the Defendant, the Plaintiff on January 25, 2006, filed a demand for arbitration with the American Arbitration Association, consistent with the requirements of the original agreement. That arbitration has not yet been conducted. Nevertheless, the Plaintiff then filed the subject action in this Court.

The Defendant has filed its Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure contending that this Court lacks subject matter jurisdiction over this cause of action as a result of a valid arbitration agreement existing between the parties.

## STANDARD OF REVIEW

The United States Court of Appeals for the Fourth Circuit has summarized the standard for reviewing a Rule 12(b)(1) motion contesting the factual basis for subject matter jurisdiction:

> When a Rule 12(b)(1) motion challenge is raised to the factual basis
> for subject matter jurisdiction, the burden of proving subject matter
> jurisdiction is on the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219
> (4th Cir. 1982). In determining whether jurisdiction exists, the
> district court is to regard the pleadings' allegations as mere evidence
> on the issue, and may consider evidence outside the pleadings

-2-

without converting the proceeding to one for summary judgment. *Id.; Trentacosta v. Frontier Pacific Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. *Trentacosta, supra,* 813 F.2d at 1559 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Trentacosta, supra,* 813 F.2d at 1558.

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## DISCUSSION

It is perfectly clear to this Court that there was a valid arbitration agreement contained in the agreement between the parties. The Federal Arbitration Act as set forth in 9 U.S.C. §§ 2 *et seq.,* sets forth the strong "federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As the Defendant has aptly noted, this Act "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd,* 470 US 213, 218 (1985) (emphasis in original).

The Federal Arbitration Act clearly provides for this Court to enter a stay of these proceedings pending arbitration. 9 U.S.C. § 3. However, the United States Court of Appeals for the Fourth Circuit in *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001), further held that a District Court has discretion to dismiss a complaint where

it finds that all of the claims before it are arbitrable.[1]  However, the position of the Fourth Circuit

is clear to this Court.  This Court has reviewed the complaints asserted by the *pro se* Plaintiff in

this action and it is clear to this Court that all of this claims fall within the ambit of the

arbitration agreement which is clearly the reason for his having initially filed for arbitration.

CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss is GRANTED.  A

separate Order follows dismissing this action without prejudice.

February 28, 2007                                      /s/

                                                       Richard D. Bennett
                                                       United States District Judge

---

[1]  There appears to be a split of authority as to whether or not a District Court should enter a dismissal order or stay the action.  Compare *Greene v. Ameritech Corp.,* 200 F.3d 967, 973 (6th Cir. 2000). *Bercovitch v. Baldwin School Inc.*, 133 F.3d 141, 156 and n.21 (1st Cir. 1998).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KWAKU O. KUSHINDANA            *

       Plaintiff *pro se*            *

       v.            *   CIVIL ACTION NO. RDB-06-1328

NEIGHBORHOOD STABILIZATION            *
FUND, INC.
                     *

       Defendant
                   ******

## O R D E R

For the reasons stated in the foregoing Memorandum Opinion, it is this 28th day of February 2007 HEREBY ORDERED that:

1. Defendant's Motion to Dismiss (Paper No. 6) is GRANTED;

2. Plaintiff's Complaint is DISMISSED without prejudice;

3. Plaintiff's Motion for Summary Judgment (Paper No. 12) is DENIED as MOOT;

4. Plaintiff's Motion for Leave to File Surreply (Paper No. 17) is DENIED as MOOT;

5. The Clerk of the Court shall CLOSE this case; and

6. Copies of this Order and the foregoing Memorandum Opinion shall be sent to the Plaintiff and Defense Counsel of Record;

                         /s/_____

                         Richard D. Bennett
                         United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MILTON NELSON WARD III                          )
                                                )
     Plaintiff                             )
                                                )
     v.                                    )          C.A. 07CV00413
                                                )
NEIGHBORHOOD ASSISTANCE                         )
CORPORATION OF AMERICA, et al.,                 )
                                                )
     Defendants.                           )

## ORDER OF DISMISSAL

Upon consideration of Defendants The Neighborhood Assistance Corporation of America, Bruce Marks, Tammy Johnson, and Jason Tinoco's Rule 12(b)(1) Motion to Dismiss, and any opposition thereto, and having determined that the claims filed against these Defendants in this litigation are subject to arbitration pursuant to a valid arbitration agreement between the parties, it is this _____ day of _____, 2007, hereby

    ORDERED, that the Motion is hereby granted, and it is further

    ORDERED, that Plaintiff's requests for injunctive relief are denied as moot, and it is further

    ORDERED, that this matter is dismissed as against Defendants The Neighborhood Assistance Corporation of America, Bruce Marks, Tammy Johnson, and Jason Tinoco.


_____
UNITED STATES DISTRICT COURT JUDGE

Copies to:

Douglas E. Fierberg, Esq.
Bode & Grenier, L.L.P.
1150 Connecticut Avenue, N.W.

10

Ninth Floor
Washington, D.C. 20036-4192
*Counsel for Defendant NACA*

Milton N. Ward
3141 Buena Vista Terrace SE
Apt. 3
Washington, DC 20020
*Plaintiff*

Mitchel H. Kider, Esq.
Bruce E. Alexander, Esq.
Weiner Brodsky Sidman Kider PC
1300 Nineteenth Street, NW, Fifth Floor
Washington, DC 20036
*Counsel for Defendant Citimortage, Inc.*

11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MILTON NELSON WARD III | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. 07CV00413 |
| | ) | |
| NEIGHBORHOOD ASSISTANCE | ) | |
| CORPORATION OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>ORDER OF DISMISSAL</u>**

Upon consideration of Defendants The Neighborhood Assistance Corporation of America, Bruce Marks, Tammy Johnson, and Jason Tinoco's Rule 12(b)(1) Motion to Dismiss, and any opposition thereto, and having determined that the claims filed against these Defendants in this litigation are subject to arbitration pursuant to a valid arbitration agreement between the parties, it is this _____ day of _____, 2007, hereby

ORDERED, that the Motion is hereby granted, and it is further

ORDERED, that Plaintiff's requests for injunctive relief are denied as moot, and it is further

ORDERED, that this matter is dismissed as against Defendants The Neighborhood Assistance Corporation of America, Bruce Marks, Tammy Johnson, and Jason Tinoco.

_____
UNITED STATES DISTRICT COURT JUDGE

Copies to:

Douglas E. Fierberg, Esq.
Bode & Grenier, L.L.P.
1150 Connecticut Avenue, N.W.

1

Ninth Floor
Washington, D.C. 20036-4192
*Counsel for Defendant NACA*

Milton N. Ward
3141 Buena Vista Terrace SE
Apt. 3
Washington, DC 20020
*Plaintiff*

Mitchel H. Kider, Esq.
Bruce E. Alexander, Esq.
Weiner Brodsky Sidman Kider PC
1300 Nineteenth Street, NW, Fifth Floor
Washington, DC 20036
*Counsel for Defendant Citimortage, Inc.*