UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

APR 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Milton Nelson Ward III
3141 Buena Vista Terrace SE
Apt 3
Washington, DC 20020
202-731-1799

VS.

CIVIL ACTION NO. 07 0413

Neighborhood Assistance Corporation of America (NACA) et al.

**Memorandum of points and authorities in opposition to defendant NACA's Rule 12(b)(1) motion to dismiss.**

I.  **Claims and Injunctions not governed by arbitration agreement**

The plaintiffs' claims and request for injunctions do not fall outside this Court's subject matter jurisdiction due to the arbitration agreement referenced by the NACA defendants; because the claims and request relate to the HAND program, which is a separate service, for which a fee was paid. NACA's duties in the HAND program are outlined in the NACA Homebuyer Workbook (See exhibit 1) and in a separate HAND agreement.

The defendant makes numerous references to NACA's "free services". These references are found in both the motion to dismiss and the "Disclosure Statement"/"Arbitration Agreement" which the defendants rely on as the sole basis of their request for dismissal.

The fist paragraph of the Disclosure talks about "the best home ownership program in America, including comprehensive pre- and post-ownership housing services (the "Program")". The second paragraph of the Disclosure goes on to describe the "Program" in more detail. See Exhibit 2. It reads as follows:

> *NACA provides an extraordinary mortgage product and comprehensive housing services to low- to moderate-income people and persons purchasing in low to moderate-income communities ("Participant" or "Participants"). The Program was established to provide affordable home ownership opportunities for Participants without requiring a down payment, points or closing cost and also to help those who otherwise cannot meet the income, debt, credit or eligibility criteria that mortgage lenders require. In particular, Participants who satisfy the requirements of the Program will be eligible to obtain mortgage loans to purchase, purchase and*

*rehabilitate or refinance their home with no down payment, no closing cost, no fees and no private mortgage insurance.*

This paragraph clearly defines the "Program" as those services that relate to the providing a mortgage product that features no down payment, no closing cost and most importantly "**no fees** ". The third paragraph of page 1 of the disclosure goes on to say:

*Therefore, all the services provided by NACA through the Program are free (rehab fees are included in the total renovation cost). To obtain the NACA mortgage and to receive all of NACA's services for free, NACA requires all participants to agree to certain things, including without limitation:*

The Disclosure goes on to list 4 items the Participant agrees to. The item that is relevant here is item number 4, which says:

*To release and hold NACA harmless from certain claims as more fully identified below. Participants are responsible for knowing the requirements of the Program, including the benefits and obligations of participation as well as the policies and procedures. Participants must read and sign this Disclosure Statement prior to their initial counseling session. Participants should choose to discontinue their participation in the Program if they do not agree with NACA's requirements.*

The significance of the third paragraph of page 1 is two things; first it links the 4 items the participant agrees to, with the receipt of "free" services, secondly it specifically identifies the existence of "rehab fee's" which are included in the total renovation "cost".

The significance of item number 4 is that it is the item that contains the initial reference to releasing NACA from liability and is the link to the subsequent agreement to arbitrate, waiving of the plaintiff's right to sue and the release of NACA from fiduciary responsibility; that defendant relies on as the basis to dismiss.

As mentioned above this case arose out of a breach of contract and fiduciary duty in the execution of "project supervision of the rehab" again referenced on page 3 under the paragraph titled "Services", which are included in the rehab cost.

The plaintiffs Settlement Statement (See exhibit 3) clearly shows a $725 NACA HAND fee being paid to NACA.

Clearly this complaint falls outside the scope of the arbitration agreement because of the fees paid which the defendants strategically failed to mention in their motion to dismiss. Though the HAND fee was financed as part of the mortgage so no money had to be paid up front, obviously it was not free. To say that the Rehab services were "free" would make just as much sense as saying the home itself was "free", which is clearly ludicrous. As the defendants state on page 8 of their motion to dismiss, the

agreement was to release NACA from liability from the free services it provided, but not for the services for which a fee was paid. That was the bargain and it must be enforced.

The plaintiff would like to acknowledge the value of the services received from NACA. It had been a long time dream of the plaintiff to own a multi-family home. Although I had a decent credit rating and some funds to go toward a down payment I would not have been able to come up with the 15% to 20% lenders want to purchase an investment property anytime soon. I would also like to point out that this purchase was important to me not only for reasons of personal financial gain but because I bought into the idea of middle classed people investing in distressed areas to be a stabilizing influence and to have a positive influence on the community. This was and is very important to me.

I would also like to note that although I concede that the mortgage services provided by NACA are without "fee" to the buyer I do not agree that they are without cost. People make personal sacrifices and make a choice to subject themselves to rigorous financial discipline in order to qualify for the NACA program. I myself made a choice to live without an automobile for 16 months after my truck died in November of 2005 so that I could qualify to purchase this property. At this point it is obvious that it would have been easier to dip into my $401K and by a one-bedroom condo or a townhouse and waited while my investment grew. I believe NACA has lost sight of these types of sacrifices if it ever had it.

In Wagman v. Lee 457 A 2d 401 (DC 1983) this court ruled that the plaintiff was entitled to compensatory and punitive damages when the defendant willfully disregarded the plaintiffs rights, while breaching the defendants responsibility as a fiduciary agent. Clearly NACA has committed the same breach here.

Also the plaintiff would like to note that this motion to dismiss was filed on the 6th of April 2007 as per the defendant's certificate of service and was filed on behalf of all the NACA defendants including defendants Tammy Johnson and Jason Tinoco. Per the court docket a response from Tammy Johnson and Jason Tinoco was due by 5 April 2007. I move that this motion to dismiss not apply to these defendants regardless of the ruling on the motion.

The bottom line is that NACA agreed to help me manage my rehab project and even went so far as to charge me a fee to do so. After all their legal wrangling and hiding behind a mountain of documents and trying to pass themselves off as some kind of "savior", they have yet to explain or give a good reason of why they have not done what they said they would do. Absent any explanation for the defendants behavior and even their defense of it one can only conclude that they are engaging in the type of willful, reckless and flagrant disregard for obligations of trust referred to in Brown v. Coates, 253 F2d. 36 (D.C. Cir., 1958) that makes them liable to punitive damages. I offer that there is no good reason for NACA's behavior and petition the court to hold them accountable and allow 12 good citizens of the District of Columbia to have

the last word in this case and to protect the plaintiff from irreparable financial harm by granting his injunctions.

*Milton Ward* (signature)

Milton Nelson Ward III
3141 Buena Vista Terrace SE
Apt 3
Washington, DC 20020
202-731-1799

**Can you do it yourself?** No! Even the most experienced homeowner lacks the knowledge and expertise of a professional home inspector. However, NACA requires that you and the Buyer Agent attend the inspection so that you can become familiar with the home you intend to buy.

**How do you find a home inspector?** NACA can recommend qualified home inspectors, but you can use another inspector as long as he or she provides a comprehensive report and neither was referred to you by the seller or listing broker nor has any ties to either.

**When do you call in the home inspector?** An inspector is typically hired immediately after the Offer or Purchase and Sale Agreement is signed and executed. Always make your purchase obligations contingent upon a home inspection that you deem satisfactory.

**Continuation of home inspections:** Consider additional costs for inspections including roof certification, structural engineering inspection, licensed HVAC inspector, and home warranty.

## HOME AND NEIGHBORHOOD DEVELOPMENT (HAND)

NACA's mortgage product includes a Purchase/Rehab option that allows you to buy a home and fix it up at the same time. While it may be difficult to find a home that is just right, this program provides a unique opportunity to make necessary improvements to your home. Because NACA does not want you to be financially burdened by unanticipated lump-sum costs for future repairs, NACA may also require renovation if the Home Inspection indicates existing and potential problems. In either case, *the costs of renovation will be added into your mortgage.* The only up-front expense to you is for the evaluation and scope of work called the work write-up.

This may be your only opportunity to get financing for home improvement work in the near future, so it is important to carefully consider making improvements at this time. In addition to making your home more comfortable, renovation can increase the rental value of your other units and the future sale price as well. If you desire renovation work, you must notify your Housing Consultant before you sign a Purchase Contract or immediately after you have completed the inspection.

### NACA's SERVICES
Renovations can be difficult and stressful. Factors such as age, neglect and hidden conditions often complicate a renovation. NACA may therefore require work to be reviewed and monitored by NACA's Home And Neighborhood Development (HAND) department. A NACA approved home inspector will create a detailed report of the condition of your house. HAND will review the report and provide a preliminary estimate primarily based upon work required by building code, energy code and structural considerations. Work for building items that are functional but in poor condition will be the next order of priority. Work which is not necessary to the basic performance of the house will have the lowest priority and may not be allowed under the program (i.e. appliances, whirlpools, cosmetic upgrades etc.)

NACA receives a fee for the administration of the **HAND** program and oversight of the renovation process to ensure that it adheres to NACA's procedures. The fee is based on the cost of the renovation. These costs will be included in the mortgage (the member pays directly for the home inspection and work write-up). You may contact your local NACA Housing Consultant for the actual fee and payment schedule. *You should never pay the Rehab Specialist yourself*, even for work not directly related to the NACA project. You will be responsible for the

Exhibit 1

Section III: Property Condition & Renovation – Step Six

All project management and rehab costs will be included in your total loan amount. The amount of renovation you can finance is limited by your Maximum Purchase Price and by the home's as-improved appraisal (its appraised value after renovation). If the costs for renovations exceed this limit, you have three options. First, you can renegotiate a lower price for the house. Second, you can eliminate some non-essential renovations. Finally, you may back out of the deal. When the home inspection reveals necessary repairs that you are unable to finance, you may bail out on the basis of your home inspection clause in the P&S contract. If, however, you are unable to finance voluntary renovations (such as building a patio, or replacing cabinets, etc.), you may have more difficulty voiding the contract. Therefore, you may wish to negotiate a clause into the P&S that makes the sale contingent on your ability to do certain renovations.

If you are making substantial repairs and cannot live in the property during the renovation, you will not be required to make a mortgage payment for up to six months. NACA's unique financing allows you to delay this interest without increasing your monthly payment by extending the loan period or reducing the interest rate of the loan. At the mortgage closing, the money for the rehab work will be escrowed to insure that the agreed upon renovations are completed.

## REHAB PROCESS:
### Step 1: Work Write-Up
You first need to determine what work will be done on the property. **HAND** will assign a Rehab Specialist to complete the work write-up and contractor agreement. The Rehab Specialist will develop the scope of work from the home inspection report, preliminary estimate, site visit and discussions with you. The Work Write-up is then submitted to NACA qualified building contractors to bid. (The Rehab Specialist would provide you with a list of pre-qualified building contractors). Relatives or close family friends are not allowed to bid on your project.

The Work Write-up defines the work according to the categories outlined below. Code Items must be included in order to have your purchase approved. Home Improvement items are fundamental upgrades of existing items and systems that increase the performance of the house. Wish List items are discretionary and may be outside the scope of the work allowed by NACA.

You must carefully consider each item included in the Work Write-up as this is the basis for the estimate and contract. Work that falls beyond the scope of the Work Write-up will not be performed unless it is the result of unforeseen conditions. Changes to the contract which was based on the Work Write-up must pass an approval process which is likely to delay project completion.

Exhibit 1

| REHAB I | REHAB II | REHAB III |
|---|---|---|
| Code | Home Improvement | Wish List |
| Safety/structure compliance | Windows | Additions |
| Termites/ants | Doors | Kitchen cabinets |
| Roof condition | Ventilation | Additional bath |
| Heating | Interior finishes | Landscape |
| Plumbing | Exterior finishes | Decks |
| Electrical | Masonry | Skylights |
| Asbestos removal | Paint | Ceramic tiles |
| Lead paint | Insulation | Optional finishes |
| Energy Efficiency | Kitchen remodel | Upgrades |
| | Bathroom remodel | Improvements |

Step 2: Contractor Selection

All bids are to be carefully reviewed by the Rehab Specialist and Member to be sure all items in the Work Write-up have been considered by the contractor. The contractor's estimated bid cost is compared to the Member's rehab budget. The scope of work may be adjusted at this time to fit the budget. Remember that the lowest bid is not always the best; you want high-quality and timely work. It is more important to choose the contractor best qualified to perform the work than to choose the lowest bidder. You, the member, are ultimately responsible for choosing the contractor.

Step 3: Construction Supervision

After the mortgage closes the construction needs to begin as soon as possible but not later than 14 days from the closing. You need to work with your contractor to insure that this happens or to contact **HAND** to assist you. **HAND** works with independent inspectors who visit the project whenever a request for payment is submitted. The application for payment is submitted to **HAND** by the contractor and must be signed by you. Other supporting documents are also required to be submitted with the request. The funds are disbursed directly to the contractor pending inspection. The final disbursement request is submitted along with documentation of final inspections and certificate of occupancy when required. When a project is complete you will need to sign the final disbursement request indicating that all the work has been performed to your satisfaction. You, the Member, must monitor the project and if necessary alert **HAND** concerning any issues relating to the rehab that cannot be resolved between you and your contractor.

A full description of the renovation process is contained in the **HAND** Procedure Manual that can be obtained from a Housing Consultant or at your local NACA office.

Exhibit 1

# NEIGHBORHOOD ASSISTANCE CORPORATION OF AMERICA ("NACA")
## DISCLOSURE STATEMENT & AUTHORIZATIONS[1]
(Revised 10/1/04)

The Neighborhood Assistance Corporation of America ("NACA") is a Massachusetts non-profit corporation. Through community outreach and aggressive advocacy activities, NACA has identified, exposed and opposed predatory lending policies and exploitative practices by financial institutions. Largely as a result of NACA's advocacy activities, NACA is able to provide the best home ownership program in America, including comprehensive pre- and post-ownership housing services (the "Program"). References herein to NACA also apply to related, affiliated or outgrowth corporations including successors and assigns.

NACA provides an extraordinary mortgage product and comprehensive housing services to low- to moderate-income people and persons purchasing in low- to moderate-income communities ("Participant" or "Participants"). The Program was established to provide affordable home ownership opportunities for Participants without requiring a down payment, points or closing costs and also to help those who otherwise cannot meet the income, debt, credit or eligibility criteria that mortgage lenders require. In particular, Participants who satisfy the requirements of the Program will be eligible to obtain mortgage loans to purchase, purchase and rehabilitate, or refinance their home with no down payment, no closing costs, no fees, and no private mortgage insurance premiums.

NACA wants to give as many people as possible an opportunity to purchase the home of their dreams. Therefore, all the services provided by NACA through the Program are free (rehab fees are included in the total renovation costs). To obtain the NACA mortgage and to receive all of NACA's services for free, NACA requires all Participants to agree to certain things, including, without limitation:

1. To participate in at least five activities a year to support neighborhood stabilization initiatives and other issues central to NACA's mission;

2. To become a member of the Neighborhood Stabilization Fund as described in the Neighborhood Stabilization Fund Disclosure Statement and Membership Application;

3. Both applicant and co-applicant(s) must reside at the house they purchase or refinance through the Program as their primary residence for as long as they have a mortgage obtained through the Program. Owner-occupied housing is fundamental to NACA's mission of stabilizing communities. Thus, a violation of this requirement could entitle the lender to reject the mortgage application, foreclose on the mortgage or take other actions. In addition, NACA can require that a lien be placed on the property and/or the Participant(s) execute a promissory note to NACA to insure that the Participant(s) live there for as long as they have a mortgage through NACA. The lien or note may be

---

[1] This document may have changed from the one in the Home Buyer Workbook or a previous version. It is important that you read carefully prior to signing.

NACA Disclosure & Authorizations
Page 1 of 9

Copyright NACA 2004

~~Exhibit 1~~
Exhibit 2

*[handwritten margin note: Was not disssed / Rating specific / as house used / filled in]*

obligations of the Participant are not met. The Participant has the sole responsibility to apply for NACA Credit Access, completing a mortgage application, and making sure that all requested documents and information are provided. No act by NACA's staff, agent or associated vendors, including accessing a Participant's credit report, will be considered an application for NACA Credit Access or credit. NACA does not warrant that its determination that a Participant is NACA Qualified or NACA Credit Access approved means that a lender will approve a loan application submitted by the Participant.

NACA may require that a Participant provide documentation or take actions that are not provided or performed by NACA. NACA may provide a Participant with lists of third-party vendors or refer Participants to them and may require a Participant to use venders who meet certain requirements as determined by NACA. These third-party venders could include but are not limited to: Home Inspectors, Attorneys, Appraisers, Homeowner Insurance Agencies, Rehabilitation Specialists, and/or Real Estate Agents/Brokers. NACA makes no representations or warranties as to the qualifications, skills or appropriateness of these persons or companies, and NACA makes no representations or warranties about any aspect of their performance. NACA will not indemnify Participants for any funds paid to these or any other vendors or for any damages incurred by Participants as a result of any actions, inaction, negligence or misconduct of any kind by such persons or companies.

Participants are required to pay for credit reports[2], home inspections, rehabilitation estimates and/or other fees related to the purchase, refinancing or renovation of a home. Participants will likely be required to provide a deposit when they sign a purchase contract. NACA is not responsible for any of the costs incurred by a Participant and will not indemnify the Participant for any costs if the lender denies the loan application or for any other reason. Once a loan application is taken by NACA and forwarded to the lender, the lender will be responsible for providing the Participant with all documents required by federal and state lending laws, including but not limited to Truth-In-Lending Statements and Good Faith Estimates.

It is equally important for all Participants to realize that NACA cannot and does not offer legal, tax or accounting advice to Participants. NACA, however, wishes to alert all Participants to the fact that if they do buy and finance a home through the Program, it may be beneficial to itemize deductions for federal and state income tax purposes. Whether or not it is beneficial will depend entirely upon personal tax and financial circumstances. As a result, *do not* interpret this Disclosure Statement or any recommendations from a NACA Housing Consultant, staff, agent or any other representative of NACA as legal or tax advice. All Participants should discuss these issues with a lawyer and/or the person who helps the Participant prepare their taxes.

NACA expressly encourages all Participants in the Program to obtain their own legal counsel or other qualified professional to review this Disclosure Statement, answer legal questions or provide legal advice so that the Participant fully understands the terms of the Disclosure Statement and the nature and extent of his/her rights and obligations under the Program. NACA also expressly encourages all Participants in the Program to obtain an accountant or

---

[2] NACA has negotiated a reduced-rate fee for credit reports charged by the reporting agencies; these fees will be collected by NACA in order to purchase a report on the Participant's behalf.

financial advisor to detail the financial consequences of purchasing, refinancing, or renovating a home, participating in this Program, or the terms and conditions of any financing obtained by the Participant.

It is the policy of NACA to retain copies and return the originals of all documents submitted to NACA in pursuit of our mortgage product. No copies that NACA retains will be returned to the Participant. Any and all documentation obtained by NACA employees and staff are in fact work-product and thus privileged information property of NACA and will not be released to the Participant unless required by law. It is our strong recommendation that all Participants not only maintain a file for their original documents, but also a copy of these documents for their own personal needs.

## NO REPRESENTATIONS OR WARRANTIES:

In addition to other matters specifically addressed in other portions of this Disclosure Statement, Participants must understand that NACA does not make, and that NACA's staff, employees and agents cannot make, any representations, warranties or promises, express or implied, to the Participant, or upon which the Participant should rely, related to any of the following matters:

- That NACA represents the Participant's interests in a fiduciary or any other capacity;
- That the Participant will qualify for a mortgage loan from one of the lenders participating in the Program;
- That the lender will approve the Participant's mortgage application if they are NACA Qualified;
- That participating in this Program and purchasing, refinancing or renovating a home is the correct financial or personal decision for the Participant;
- That the home the Participant purchases, refinances or renovates through the Program will meet their purposes;
- That the home the Participant purchases, refinances or renovates is free of defects;
- That the property is worth the amount of the mortgage or that the property's value will remain the same or increase in value;
- That NACA has any obligation to the Participant to ensure that deadlines are met including but not limited to requirements in the Purchase and Sale Agreement such as mortgage application submission, commitment date, approval date and closing date;
- That the services performed by vendors, contractors, inspectors, or other third-parties will be satisfactorily performed;
- That participating in the Program will accomplish the Participant's particular goals or result in any financial benefit to the Participant;
- That participating in the Program is free from risk, including risks associated with the purchase, refinancing and renovation of a home such as, without limitation, loss of financing, default, faulty, incomplete or substandard construction services, and property loss through natural or other causes.

NACA makes no representations or warranties to the Participant with respect to any matter concerning the Program, the purchase, refinancing or renovation of their home, or with respect

to any of the Participant's rights and interests, other than what is set forth herein and limited by the terms and conditions of this Disclosure Statement.

**NOTICE OF RISKS OF HOME OWNERSHIP:**
The process of looking for, buying, financing and owning a home is filled with emotional, legal and financial risks. NACA cannot protect the Participant from those risks. For example, the Participant will make the decision to purchase a home and is responsible for the required deposit, but the lenders participating in the Program make the final underwriting decision. In addition, the Participant may, through no fault of their own, suffer a serious financial setback that could prevent them from paying their monthly mortgage payments. If such problems do arise, NACA may be available to provide the Participant with advice and counseling, but the Participant must understand that NACA may not be able to suggest and/or achieve a solution that is acceptable to them.

Obtaining mortgage financing for a home through the Program and becoming a participating member of the Neighborhood Stabilization Fund will impose important obligations on the Participant. The Participant is strongly advised not to sign a binding Purchase and Sale agreement for a home or submit a mortgage loan application until they have discussed both options with an attorney and/or other consultants who would advise them in connection with the purchase, refinance or renovation of their home and the closing of their mortgage loan.

The Participant may elect to continue to participate in the Program, subject to all of its requirements as set forth herein, or may elect to stop participating in the Program, in which case they would not be eligible to obtain a mortgage loan through the Program.

**AUTHORIZATIONS:**
I/we specifically acknowledge and agree to authorize NACA, its staff, agents, successors and/or assigns and/or related, affiliated or outgrowth corporations to:

Credit Report Authorization:
Obtain a copy(ies) of my/our credit report(s) relevant to the Program. I/We understand that NACA is obtaining my/our credit report(s) in order to assist me/us in determining my/our financial circumstances. I/We understand that despite authorizing NACA to obtain a credit report I/we have not yet applied for NACA Credit Access. (NACA requires at least one credit report, and in most instances more than one, to become NACA Qualified. NACA Qualification is good for three months. Another credit report is required to confirm your credit status prior to submitting an application for NACA Credit Access. NACA may pull credit reports for the NSF post-ownership program and additional reports for as long as you participate in the Program. A fee will be required for each credit report NACA pulls.)

Credit Access Application Authorization:
Accept and review my/our application for NACA Credit Access. I/We understand and acknowledge that a mortgage application will only be taken if and when I/we have been NACA Qualified and request to submit a mortgage application. I/We understand that my/our request to complete a mortgage application will be considered to be an Application for NACA Credit Access, and no further paperwork or signature shall be required for my/our application to be submitted.

Other Authorizations:
1. Review all related mortgage documents, including but not limited to: credit reports, tax returns, divorce or separation documents, applications, commitment letters and closing documents.
2. Verify or re-verify information relevant to the Program, including savings, employment, income and credit information, landlord verifications and any other information related to my/our qualification, mortgage application and the servicing of my/our mortgage.
3. Review all documents as prepared by third-party venders as part of my/our NACA Credit Access Application or mortgage application.
4. Retain and/or disclose all documents, applications and information related to my/our NACA Qualification, NACA Credit Access application, NSF application, mortgage application, and/or mortgage.
5. Disclose, share and use information and documentation about my/our credit, assets, income, employment, applications, loan, mortgage payments and servicing, as NACA deems appropriate.
6. Publicize my/our home purchase or refinance case in marketing, photos, video, website, internet, intranet, outreach and the media. This would also include, unless I/we notify NACA to the contrary, the placing of a sign in my/our yard or property explaining that I/we purchased a home through NACA.
7. Communicate with me/us via telephone and email. This grants all authorizations required by laws that would otherwise restrict communications to individuals or households.
8. Communicate with and obtain information from all entities that own or service the mortgage I/we obtained through the Participating Lender, including but not limited to communicating about and obtaining information from the entity concerning delinquencies and other payment issues.
9. Take steps in the event that any payments on a loan become delinquent including accessing credit reports, obtaining creditor and mortgage information, reporting my/our name(s) and circumstances surrounding the loan to persons and organizations, providing my/our credit report and other information and documentation to the NSF peer lending committee, and/or all other actions, rights and remedies as NACA deems appropriate. This can also be done by the lender if authorized by NACA.
10. *In the event that I am/we are at risk of losing my/our home and the lender may incur a* payoff that is less than the total amount due (i.e. short sale), to discuss and negotiate with secured parties payoffs of amounts less than the total amount due.

**EXECUTION:**
By my/our signature(s) below, I/we acknowledge that I/we have received a copy of and have read this Disclosure Statement and agree with and will abide by the statements and requirements stated herein. I/We understand the benefits and obligations of participating in the Program and that I/we may, at any time prior to the closing on my/our mortgage loan,

cease participating in the Program without obligation to NACA. In addition, by my/our signature(s) below, I/we also acknowledge that I/we understand the risks involved in purchasing, refinancing, renovating and owning my/our own home, and I/we hereby release NACA from, and agree that I/we will not hold NACA, its Directors, Officers, Staff, Agents, Independent Contractors, or Consultants responsible for any and all claims (including claims of negligence), suits, losses, costs, expenses or damages (including attorneys' fees) that may result from, arise out of or otherwise relate to my/our participation in the Program, the purchase, refinancing or renovation of my/our home. Should there ever arise a controversy or claim with NACA resulting from or otherwise relating to the Program, the purchase, refinancing or renovation of my/our home including without limitation whether any claim or dispute is subject to arbitration, such controversy, claim or dispute shall be submitted to and resolved by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect. Any arbitration hereunder shall be held in Boston, Massachusetts, or at such other location as NACA may designate. The judgment in the arbitration proceeding shall be final and binding on the parties, and the judgment on such award rendered by the Arbitrator may be entered in any court having competent jurisdiction. Each party required to participate shall be personally responsible for one-half of the costs of arbitration excluding costs associated with each party's presentation, which shall be borne by that party; provided, however, that if NACA prevails in any such arbitration, NACA shall, in addition to all other remedies provided by law, be entitled to an award of its attorneys' fees and costs.

I/We understand and acknowledge that absent a written agreement to the contrary, NACA does not and will not serve as my/our fiduciary in any aspect of the Program including but not limited to the purchase, refinancing or renovation process.

Participant One:

Signature: _Milton Ward_  Date: _March 18, 2005_

Name: _Milton Ward_  Social Security Number: _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_

Participant Two:

Signature: _____  Date: _____

Name: _____  Social Security Number: _____

Participant Three:

Signature: _____  Date: _____

Name: _____  Social Security Number: _____

* If the Participant wishes to have a copy of this signed Disclosure Statement, he/she should request it from a NACA staff person or their Housing Consultant.

04/07/06  15:57 FAX @002

OMB NO. 2502-0265

| A. U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT SETTLEMENT STATEMENT | B. TYPE OF LOAN | | | | |
|---|---|---|---|---|---|
| | 1.☐FHA | 2.☐FmHA | 3.☒CONV. UNINS. | 4.☐VA | 5.☐CONV. INS. |
| | 6. FILE NUMBER AZ-060241 | | 7. LOAN NUMBER 002003405065 | | |
| | 8. MORTGAGE INS CASE NUMBER | | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.
1.0   3/96   (AZ-060241.PFD/AZ-060241/22)

| D. NAME AND ADDRESS OF BORROWER | E. NAME AND ADDRESS OF SELLER | F. NAME AND ADDRESS OF LENDER |
|---|---|---|
| Milton Ward 7234 Fairchild Dirve #101 Alexandria, VA 22306 | VN Ventures LLC 2308 19th Street NW Washington, DC 20009 | Citi Mortgage Inc 1000 Technology Drive O'Fallon, MO 63368-2240 |

| G. PROPERTY LOCATION 3141 Buena Vista Terrace SE Washington, DC 20020 | H. SETTLEMENT AGENT  52-2216471 Paramount Title & Escrow, LLC | I. SETTLEMENT DATE April 7, 2006 |
|---|---|---|
| | PLACE OF SETTLEMENT 1534 14th St. NW Washington, DC 20005 | |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract Sales Price | 500,000.00 | 401. Contract Sales Price | 500,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 50,522.65 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes         to | | 406. City/Town Taxes         to | |
| 107. County Taxes            to | | 407. County Taxes            to | |
| 108. Assessments             to | | 408. Assessments             to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 550,522.65 | 420. GROSS AMOUNT DUE TO SELLER | 500,000.00 |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER: | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER: | |
| 201. Deposit or earnest money | 5,000.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 536,137.00 | 502. Settlement Charges to Seller (Line 1400) | 37,408.52 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Lender Credit | 10,300.26 | 504. Payoff of first Mortgage to The Adams National | 135,109.67 |
| 205. Reinspection Credit | 600.00 | 505. Payoff of second Mortgage | |
| 206. | | 506. Deposit retained by broker | 5,000.00 |
| 207. | | 507. | |
| 208. Rent Proration 4/8-4/30 | 536.66 | 508. Rent Proration 4/8-4/30 | 536.66 |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes    04/01/06 to 04/07/06 | 32.07 | 510. City/Town Taxes    04/01/06 to 04/07/06 | 32.07 |
| 211. County Taxes            to | | 511. County Taxes            to | |
| 212. Assessments             to | | 512. Assessments             to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. Water Escrow | 350.00 |
| 216. | | 516. | |
| 217. | | 517. Water Balance to DCWASA | 241.91 |
| 218. | | 518. Property Manager Payment to Fred A. Smith Co | 4,134.49 |

04/07/06  15:58 FAX                                                                                    ☒004

Page 2

| L. SETTLEMENT CHARGES | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price $ 500,000.00 @ 5.0000 % 25,000.00 | | | | |
| Division of Commission (line 700) as Follows: | | | | |
| 701. $12,900.00 to Long & Foster Georgetown | | | | |
| 702. $12,100.00 to Long & Foster Real Estate Inc | Less Deposit Retained | 5,000.00 | | |
| 703. Commission Paid at Settlement | | | | 20,000.00 |
| 704. to | | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | |
| 801. Loan Origination Fee  % to | | | | |
| 802. Loan Discount  % to | | | | |
| 803. Appraisal Fee  to Edrolph Shiver | | | 900.00 | |
| 804. Credit Report  to | | | | |
| 805. Recertification/Final Inspec.  to NACA | | | 600.00 | |
| 806. NACA Hand Fee  to NACA | | | 725.00 | |
| 807. Rehab Escrow  to Citi Mortgage Inc | | | 15,515.00 | 8,650.00 |
| 808. 5mths PITI  to Citi Mortgage Inc | | | 19,897.73 | |
| 809. NACA NSF Fee  to Citi Mortgage Inc | | | 50.00 | |
| 810. | | | | |
| 811. NACA Broker Fee  to NACA | POC $2,500.00CMI | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | |
| 901. Interest From 04/07/06 to 05/01/06 @ $ 71.610000/day ( 24 days %) | | | 1,718.64 | |
| 902. Mortgage Insurance Premium  months | | | | |
| 903. Hazard Insurance Premium  1.0 years | | | | |
| 904. | | | | |
| 905. | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | | | |
| 1001. Hazard Insurance  5.000 months @ $ 164.17 per month | | | 820.85 | |
| 1002. Mortgage Insurance  months @ $ per month | | | | |
| 1003. City/Town Taxes  5.000 months @ $ 264.84 per month | | | 1,324.20 | |
| 1004. County Taxes  months @ $ per month | | | | |
| 1005. Assessments  months @ $ per month | | | | |
| 1006.  months @ $ per month | | | | |
| 1007.  months @ $ per month | | | | |
| 1008. Aggregate Adjustment  months @ $ per month | | | -429.03 | |
| 1100. TITLE CHARGES | | | | |
| 1101. Settlement or Closing Fee  to Paramount Title & Escrow, LLC | | | 250.00 | 150.00 |
| 1102. Abstract or Title Search  to Ifavor Abstracts Inc | | | 274.75 | |
| 1103. Title Examination  to Paramount Title & Escrow, LLC | | | 350.00 | |
| 1104. Title Insurance Binder  to | | | | |
| 1105. Document Preparation  to Paramount Title & Escrow, LLC | | | | 75.00 |
| 1106. Notary Fees  to | | | | |
| 1107. Attorney's Fees  to | | | | |
| (includes above item numbers: | | ) | | |
| 1108. Title Insurance  to Lawyers Title Insurance Corporation | | | 2,050.00 | |
| (includes above item numbers: | | ) | | |
| 1109. Lender's Coverage  $ 535,137.00 | 175.00 | | | |
| 1110. Owner's Coverage  $ 500,000.00 | 1,875.00 | | | |
| 1111. Courier Fee  to Federal Express | | | 30.00 | |
| 1112. Document Scanning Fee  to Paramount Title & Escrow, LLC | | | 45.00 | |
| 1113. Release Fee  to Paramount Title & Escrow, LLC | | | | 75.00 |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | |
| 1201. Recording Fees: Deed $ 26.50; Mortgage $ 201.50; Releases $ | | | 228.00 | |
| 1202. City/County Tax/Stamps: Deed  11,000.00; Mortgage | | | 5,500.00 | 5,500.00 |
| 1203. State Tax/Stamps:  Revenue Stamps  ; Mortgage | | | | |
| 1204. Construction Tax  to DC Treasurer | | | 397.51 | |
| 1205. Recording Fee  to BLS | | | 50.00 | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | |

## Certificate of Service

I HEREBY CERTIFY that a copy of the forgoing Memorandum of Points and Authorities in opposition to defendant NACA's Rule 12(b)(1) motion to Dismiss was mailed, certified mail this 17th day of April 2007 to:

Mitchel H. Kider, Esq.
Bruce E. Alexander, Esq.
Weiner Brodsky Sidman Kider PC
1300 Nineteenth Street, NW, Fifth Floor
Washington, DC 20036
Counsel for Defendant Citimortgage, Inc.

Douglas E. Fierberg, Esq.
Bode & Grenier, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C. 20036-4192
Counsel for Defendant Neighborhood Assistance Corporation of America.

*[signature]*